UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMANDA ZABIC,

              Plaintiff,

v.                           Case No. 8:15-cv-2565-T-33AEP

VERIZON WIRELESS SERVICES, LLC
and CELLULAR SALES OF KNOXVILLE,
INC.,

              Defendants.

_____/

## ORDER

This cause comes before the Court pursuant to Plaintiff Amanda Zabic's Second Motion to Remand and Motion for Award of Attorneys' Fees and Costs (Doc. # 21), which was filed on November 17, 2015. Defendant Cellular Sales of Knoxville, Inc. filed a Response in Opposition to the Motion on December 4, 2015. (Doc. # 32). For the reasons that follow, the Court grants the Motion by remanding this case to state court pursuant to 28 U.S.C. § 1447(c), after finding that it lacks subject matter jurisdiction. However, after due consideration, the Court declines to award attorneys fees and costs.

## I.   Factual Background

In September of 2012, Amanda Zabic, who was 18 at the time, sought to upgrade her cellular telephone at a Verizon store in Bartow, Florida. (Doc. # 7 at ¶ 15). Zabic

indicates that a Verizon employee, Joshua Stuart, "provided Ms. Zabic with a new phone and assisted her in transferring data which had been electronically stored in Ms. Zabic's old cellular phone," to a new cellular phone. (Id. at ¶ 17). The electronically stored data included "photographs of Ms. Zabic in an undressed, or semi-dressed state." (Id. at ¶ 18). According to Zabic, Verizon "promised and repeatedly assured that all data would be transferred from her old phone to the new unit without the necessity of displaying any of the photographs and without the photographs or other personal information being seen or viewed by Verizon employees or anyone else." (Id. at 19). Despite these assurances, Zabic contends that Verizon employees, including Stuart and another employee (Gregory Lambert) viewed the nude photographs of her, saved the photographs to their personal cellular phones, and then shared those images with others.

Specifically, Zabic alleges that when one of her acquaintances, Joshua Wingate, came to the same Bartow, Florida Verizon store, Verizon employees showed Wingate "photographs of a nude, semi-nude and partially clothed Amanda Zabic." (Id. at ¶ 28).

Wingate advised Zabic that Verizon employees were displaying her nude photos and, accordingly, Zabic contacted law enforcement. (Id. at ¶¶ 30, 33). According to Zabic, Stuart and Lambert "were charged and convicted of Offenses against Computer Uses, Prohibition of Lewd Acts and Theft." (Id. at ¶ 34).

## II. **Procedural History**

Prior to initiating a lawsuit, Zabic's counsel sent a lengthy demand letter dated January 15, 2015, to Cellular Sales of Knoxville, Inc. (the "First Demand Letter"). (Doc. # 13-1 at 18-24). In the First Demand Letter, Zabic's counsel commented on "the emotional and psychological damages to [Zabic], an innocent young woman" and demanded $150,000 "in satisfaction of all potential claims." (Id. at 20, 23). Defendants made a counter-offer to settle the case in the amount of $5,000.00, which Zabic declined. (Doc. # 21 at 7).

Thereafter, on August 26, 2015, Zabic filed a Complaint against Verizon Wireless Services, LLC and Cellular Sales of Knoxville, Inc. in the Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County, Florida, bringing the following counts: negligence, invasion of privacy,

public disclosure of private facts, theft and conversion, civil remedies for criminal practices, intentional infliction of emotional distress, respondeat superior, and vicarious liability. (Doc. # 1-1 at 5-23).

On September 23, 2015, Defendants removed the action to this Court on the basis of the Court's diversity jurisdiction under case number 8:15-cv-2214-T-33EAJ. Thereafter, on October 2, 2015, Zabic filed an Amended Complaint naming Cellco Partnership d/b/a Verizon Wireless and Cellular Sales of Knoxville, Inc. as the Defendants. (Doc. # 7). The Amended Complaint did not change the substance of the allegations or counts and was merely filed to correct the name of the Verizon Defendant. (Doc. # 21 at 2).

On October 2, 2015, Zabic's counsel transmitted an additional demand letter to Defendants (the "Second Demand Letter") upping the demand to $2 million. (Doc. # 1-2 at 1-2). In the Second Demand Letter, Zabic's counsel indicated: "Our client came close to committing suicide because of the embarrassment and humiliation she believed would follow her for the rest of her life as the result of having patronized

your store and being victimized by your employees." (<u>Id.</u> at 2).

On October 9, 2015, this Court entered an Order sua sponte remanding this case to state Court after finding that it lacked subject matter jurisdiction. (Doc. # 1-1 at 37-47). In the Order of Remand, the Court determined that the Defendants provided detailed information about their citizenship so as to satisfy the Court that the parties were completely diverse. (<u>Id.</u> at 39). However, the Court found that the Defendants, as the removing parties, failed to demonstrate that the amount in controversy exceeded the jurisdictional threshold of $75,000, warranting remand. (<u>Id.</u>). At the time of the Order of Remand, the First Demand Letter was tendered to the Court, but the Second Demand Letter was not.

Notably, after the Court entered its Order of Remand, Zabic filed her Motion to Remand (the "First Motion to Remand") specifying, inter alia: "Plaintiff [] freely admits that damages substantially in excess of $75,000 will be sought in whatever forum she finds herself." (Doc. # 13-1 at n.1). The First Motion to Remand was a nullity and addressed a moot point because, at the time it was filed,

the Court had already entered its sua sponte Order of Remand. (Doc. # 1-1 at 37-47).

Not long after the Court remanded the case to state Court, Cellular Sales of Knoxville filed a Second Notice of Removal, to which Verizon unanimously joined, which initiated this case. (Doc. # 1). Cellular Sales of Knoxville indicates that the Court should "favorably consider a second removal petition following a prior remand." (Doc. # 1 at 4). Cellular Sales of Knoxville relies on the First Motion to Remand and the Second Demand Letter to argue that the amount in controversy exceeds $75,000.  At this juncture, Zabic seeks an Order of Remand, once again contending that the jurisdictional amount in controversy has not been satisfied.

## III. <u>Legal Standard</u>

Under 28 U.S.C. § 1441, a defendant can remove an action to a United States District Court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). United States District Courts have original jurisdiction over all civil actions between parties of diverse citizenship where the amount in controversy exceeds $75,000. <u>See</u> 28 U.S.C. § 1332(a). Removal is proper if the complaint makes it "facially apparent" that the amount in controversy

exceeds $75,000. <u>Williams v. Best Buy, Co.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." <u>Id.</u>

As explained in <u>Watson v. Carnival Corp.</u>, 436 F. App'x 954, 955 (11th Cir. 2011), "Once a case is remanded to state court, a defendant is precluded from seeking a second removal on the same ground." The "different ground" does not refer to the type of federal jurisdiction, such as diversity jurisdiction, but to "the pleading or event that made the case removable." <u>Id.</u> at 956. "In other words, a defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition when subsequent pleadings or events real a new and different ground for removal." <u>Id.</u> As summarized in <u>Jennings v. Powermatic</u>, No. 3:14-cv-250-J-32JRK, 2014 U.S. Dist. LEXIS 66881, at *3 (M.D. Fla. May 15, 2014), "the mere submission of additional evidence on the same ground offered in the initial removal is not sufficient to justify a second removal." <u>Id.</u>

In this case, it is undisputed that the parties are of diverse citizenship. The only question is whether the amount in controversy exceeds the $75,000 jurisdictional threshold. In both the initial Complaint and the Amended Complaint, Zabic has not specified the precise amount of relief sought in the lawsuit, instead alleging damages "in excess of $15,000." (Doc. # 1-1 at 5, ¶ 1; Doc. # 7 at ¶ 1). Where, as here, "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007). Against the touchstone of these authorities, the Court will examine the propriety of the Second Notice of Removal.

## IV. Analysis

The Second Notice of Removal is premised on two items: (1) Plaintiff's First Motion to Remand filed on October 9, 2015 (after remand had already been ordered in case 8:15-cv-2214-T-33EAJ), which included the statement that: "Plaintiff reserves all right to argue and present damages in this case in excess of the $75,000 jurisdictional minimum. In candor to the Court, undersigned counsel also discloses that a subsequent demand letter was made on the Defendants in the

amount of $2,000,000, although there was no specific evidentiary support cited or included in that demand . . . Plaintiff also freely admits that damages substantially in excess of $75,000 will be sought in whatever forum she finds herself." (Doc. # 13-1 at n.1); and (2) Plaintiff's October 2, 2015, Second Demand Letter seeking the payment of $2 million. (Doc. # 1-2).

The Court determines that this matter must once again be remanded to state court. As in its First Notice of Removal, the Second Notice of Removal relies exclusively on the subjective assessment of Zabic's counsel as the basis for satisfying the jurisdictional minimum. The Court was not satisfied that the jurisdictional threshold was met by a preponderance of the evidence when initially presented with Zabic's counsel's subjective impressions regarding the value of the case, and the Court is similarly not convinced at this juncture.

As noted by Zabic in the Second Motion to Remand: "Just as with the Plaintiff's initial $150,000 demand, however, the increased demand of $2 million also contains no supporting documentation or tangible supporting proof – there still are no medical bills; there still has been no

9

hospitalization; there still are no wage loss claims; there still have been no surgeries; and there still is no future surgical recommendation." (Doc. # 21 at 6).

A number of federal courts, including the present Court, have held that settlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction. Lamb v. State Farm Fire Mut. Auto. Ins. Co., No. 3:10-cv-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010); Piazza v. Ambassador II JV, L.P., No. 8:10-cv-1582-T-23EAJ, 2010 WL 2889218, at *1 (M.D. Fla. July 21, 2010)("A settlement offer is relevant but not determinative of the amount in controversy.").

Instead, courts have analyzed whether demand letters merely "reflect puffing and posturing," or whether they provide "specific information to support the plaintiff's claim for damages" and thus offer a "reasonable assessment of the value of [the] claim." Lamb, 2010 WL 6790539, at *2 (quoting Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)); Piazza, 2010 WL 2889218, at *1 ("a settlement demand provides only marginal evidence of the amount in controversy because the 'plaintiff's letter is nothing more than posturing by

plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages' sought by the plaintiff.").

Upon review, this Court finds that Zabic's increased demand for $2 million reflects mere posturing rather than a reasonable assessment of the value of her claim based on particular facts. The Second Demand Letter is very brief and adds no additional facts, other than Zabic's counsel's statement that Zabic considered suicide when she learned that her photos had been compromised. Similarly, Zabic's counsel's admission that he intends to seek damages on behalf of his client in an amount over $75,000 does little to aid the Court in making a jurisdictional inquiry.[1]

Neither the Second Demand Letter nor the First Motion to Remand describe damages for lost wages, medical treatment, hospitalization, or any concrete loss sustained by Zabic. Compare Mick v. De Vilbliss Air Power Co., No. 6:10-cv-1390-Orl-28GRK, 2010 WL 5140849 (M.D. Fla. Dec. 14,

---

[1] Defendants filed a Notice of Supplemental Authority on December 17, 2015, reflecting that Zabic's counsel's stated in a Rule 26, Fed. R. Civ. P., initial disclosure that "Plaintiff seeks in excess of $1,000,000.00" (Doc. # 37 at 1). This isolated statement, untethered to supporting facts, does not preponderate in favor of finding that the jurisdictional threshold has been placed in issue.

2010)(demand letter including medical bills, described lost wages, and explained that a future surgery was required); Lutins v. State Farm Mut. Auto. Ins., No. 3:10-cv-817-J-99MCR, 2010 WL 6790537, at *2 (M.D. Fla. Nov. 4, 2010)(demand letter listed medical bills and calculated future medical expenses such that "the hard medical costs detailed in the letter sufficiently prove the requisite amount in controversy").

Defendants rely on cases in which courts have found that demand letters satisfied the jurisdictional threshold, but those cases are readily distinguishable.  To begin, the Court finds that Defendants' wrongful death cases, Dominquez v. Peek, No. 09-cv-842, 2010 WL 1658550 (S.D. Ala. Apr. 16, 2010), Roe v. Michelin North America, Inc., 637 F. Supp. 2d 995 (N.D. Ala. 2009), and McPhail v. Deere & Co., 529 F.3d 947 (10th Cir. 2008), are not binding, unpersuasive, and inapposite.  Without commenting on the merits of Zabic's case, and using nothing more than common sense, the Court finds that Zabic's alleged injuries are not even remotely akin to those stemming from the loss of human life as was the case in Dominquez, Roe, and McPhail.

Defendants' reliance on <u>Wilt v. Depositors Insurance Company</u>, No. 6:13-cv-1502-Orl-36KRS, 2013 WL 6195768 (M.D. Fla. Nov. 26, 2013), and <u>Cowan v. Genesco, Inc.</u>, No. 3:14-cv-261-J-34JRK, 2014 WL 3417656 (M.D. Fla. July 14, 2014), is also unavailing.  In <u>Wilt</u>, the court denied a motion to remand after reviewing factually detailed demand letters and other evidence describing a severe and permanent head injury, the outlay of substantial medical expenses for hospitalization, lost wages, and the loss of a vehicle. 2013 WL 6195768, at *3. Similarly, in <u>Cowan</u>, plaintiff's request for an order of remand was denied because plaintiff's claim for back wages alone was valued at "almost $45,000" and plaintiff sought other categories of damages as well as statutorily authorized attorney's fees. 2014 WL 3417656, at *4. Zabic's Second Demand Letter and First Motion to Remand, upon which Defendants removed the case, do not contain similar support regarding the amount in controversy. "A demand letter devoid of facts enabling the receiver to evaluate the claim may be considered nothing more than mere posturing." <u>Mick</u>, 2010 WL 5140849, at *2.

Finally, while the Court is certainly bound by the Eleventh Circuit's rulings, its decision in <u>McDaniel v.</u>

<u>Fifth Third Bank</u>, 568 F. App'x 729 (11th Cir. 2014), is distinguishable from the facts presented here. In <u>McDaniel</u>, the Eleventh Circuit reversed the trial court's remand of a class action case regarding allegedly illegal bank fees in excess of $2.4 million. The mistake made by the trial court was its "refus[al] to consider the amount of damages flowing from McDaniel's fraud claims based on its determination that those claims failed as a matter of law." <u>Id.</u> at 730. McDaniel sought compensatory damages for the entire amount of the bank fees ($2,488,335), the maximum amount of compensatory damages available under the Florida Consumer Collection Practices Act ($501,000), and punitive damages of $1,503,000. <u>Id.</u> at 731-32. The Eleventh Circuit held that "these claims establish that [the Class Action Fairness Act's] amount in controversy requirement has been met." <u>Id.</u> at 732. In contrast, Zabic has not pursued class relief and does not bring a claim involving readily calculable damages, such as the imposition of a bank fee.

From the inception of this case, Zabic's counsel has maintained that: "This is not a claim in which the loss and damages suffered by Ms. Zabic can be quantified with any degree of precision." (Doc. # 13-1 at 23). Zabic's Second

Demand Letter, seeking $2 million, fails to explain how Zabic arrived at this figure and does not provide a discussion of the economic or non-economic damages she may be seeking with any particularity.

That Zabic offered to settle her case for more than $75,000 does not establish by a preponderance of the evidence that the amount in controversy requirement is met. See Daniel v. Nationpoint, No. 2:07-cv-640, 2007 U.S. Dist. LEXIS 93367, at *5 (M.D. Ala. Dec. 19, 2007). Likewise, Zabic's counsel's statement that he intends to seek damages in excess of $75,000 (made in the First Motion to Remand) and statement that he seeks damages in excess of $1 million (made in a Rule 26 Initial Disclosure) do not provide a basis for finding that the jurisdictional threshold has been satisfied by the preponderance of the evidence. Similar to the First and Second Demand Letters, the statements made in the Motion to Remand and Initial Disclosures are not tied to any concrete factual allegations regarding Zabic's alleged damages and constitute mere puffing and posturing.

"[R]emoval statutes are construed narrowly" and "uncertainties are resolved in favor of remand." Burns v.

15

Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).
Consistent with the foregoing, the Court finds that
Defendants have once again failed to prove that the amount
in controversy exceeds $75,000. Consequently, the Court
determines that it lacks subject matter jurisdiction, and
this case must be remanded to state court. See 28 U.S.C. §
1447(c) ("If at any time before final judgment it appears
that the district court lacks subject matter jurisdiction,
the case shall be remanded.").

## V. **Fees and Costs**

Zabic requests an award of costs and attorneys' fees,
pursuant to 28 U.S.C. § 1447(c), which provides that when a
court remands a case, the court may award costs and
attorneys' fees incurred as a result of the removal.
However, the award of costs and attorneys' fees is
completely discretionary. See Publix Supermarkets, Inc. v.
United Food & Commercial Workers Int'l Union, AFL-CIO & CLC,
900 F. Supp. 419, 421 (M.D. Fla. 1995)(citation omitted).

In the case at bar, this Court denies Zabic's request
for costs and attorneys' fees. Defendants had an
objectively reasonable, but ultimately unsuccessful, basis
for removing this action (on both occasions). Thus,

although the Court has determined that it is appropriate to remand the case for a second time, the Court does not find that an award of costs and attorneys' fees is warranted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Zabic's Second Motion to Remand and Motion for Award of Attorneys' Fees and Costs (Doc. # 21) is **GRANTED** to the extent that this case is remanded to state court pursuant to 28 U.S.C. § 1447(c), because this Court lacks subject matter jurisdiction.

(2)   Zabic's request for fees and costs for improper removal is **DENIED.**

(3)   After remand has been effected, the Clerk shall **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of December, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE